A98A0723. DOUGLAS et al. v. MADDOX et al.
(505 SE2d 43)

POPE, Presiding Judge.

Plaintiffs Overnite Transportation Company and three of its management employees, James Douglas, Robert Edwards and Gary McGuire, brought a libel action against defendants: International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America; Teamster's Local No. 728; AFL-CIO; and several officials and representatives of these organizations, namely, defendants Keith Maddox, Doug Mims and Donald Scott. In their complaint, plaintiffs alleged that defendants, through Maddox, who was a union negotiator hired by the defendant organizations, had libeled them by distributing three false fliers to several hundred of Overnite's rank-and-file employees during a union organization drive at Overnite's Atlanta facilities. The first of the fliers consisted of a letter drafted by Maddox, which was written on Teamster letterhead and addressed to Douglas, stating in part that Overnite officials, including Douglas, had "been formally indicted [in Lexington, Kentucky] by the U. S. Government of massive violations of Federal Labor Laws." The letter went on to state that "[i]n fact, Douglas, Edwards and McGuire were all named in the Lexington indictment." The second flier Maddox distributed consisted of a Teamster press release, the back of which stated: "THE FEDERAL GOVERNMENT HAS INDICTED OVERNITE OFFICIALS, INCLUDING JIM [DOUGLAS], IN LEXINGTON, INDY, SACRAMENTO, CINCINNATI, KC & ELMSFORD!!" (Emphasis in original.) The third flier prepared and distributed by Maddox also was drafted on Teamster letterhead and invited Overnite's employees to "[c]ome hear why Mr. Douglas, Bobby

Edwards and Gary McGuire sued the Union for saying they were indicted by the U. S. Government for massive violations of Federal Labor [Laws]." It is undisputed that no criminal charges ever had been filed against any of the plaintiffs by the federal government. National Labor Relations Board, however, had filed a civil complaint against plaintiffs alleging labor law violations shortly before the fliers were distributed.

Defendants answered plaintiffs' complaint, denying liability, and subsequently moved for summary judgment. Plaintiffs appeal from the trial court's grant of defendants' motion. Upon review, we conclude that summary judgment in defendants' favor was improper and reverse the trial court.

1. Under Georgia law, "[a] libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). Because this case arose within the context of a labor dispute, however, plaintiffs may not avail themselves of Georgia's libel law, or the remedies thereunder, unless they can show by clear and convincing evidence that the complained of "statements were circulated with [actual] malice." See *Linn v. United Plant Guard Workers &c.*, 383 U. S. 53, 64-65 (86 SC 657, 15 LE2d 582) (1966) (applying the malice standard set forth in *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964), to cases involving labor negotiations and disputes). In the case at bar, the trial court ruled that defendants were entitled to summary judgment as a matter of law because plaintiffs could not demonstrate sufficient evidence of actual malice on Maddox's part, and thus on the part of any of the defendants, in publishing the fliers. We cannot agree.

In deciding motions for summary judgment in cases such as this, the non-moving party's evidence must be believed, and all justifiable inferences arising therefrom must be construed in that party's favor. *Barber v. Perdue*, 194 Ga. App. 287, 289 (390 SE2d 234) (1990). This standard is the same under both OCGA § 9-11-56 and FRCP 56. Id.; *Anderson v. Liberty Lobby*, 477 U. S. 242, 255 (106 SC 2505, 91 LE2d 202) (1986). Therefore, "[t]he question of law before us is whether, in this posture, viewing all the direct and circumstantial evidence and reasonable inferences in plaintiff[s'] favor, a jury could find by clear and convincing evidence that [Maddox published the fliers] with knowledge that [the information they contained] was false or with reckless disregard of whether [the information contained in them] was false or not." (Citation and punctuation omitted.) *Barber*, 194 Ga. App. at 289. See *Linn*, 383 U. S. at 65.

The "clear and convincing evidence" standard to be used in cases like this definitely is more stringent than the "preponderance of the

evidence" standard used in typical libel actions. *Barber*, 194 Ga. App. at 289. It requires a higher quality and amount of proof on the part of a plaintiff before recovery can be allowed. Id. Nevertheless, even in cases where this heightened standard is applicable, "it has been recognized that proof of actual malice 'does not readily lend itself to summary disposition[.]' *Hutchinson v. Proxmire*, 443 U. S. 111, 120, n. 9 (99 SC 2675, 61 LE2d 411) (1979)." Id. The reason for this is that proof of actual malice brings into question a defendant's state of mind, which can be determined based upon inferences drawn from objective circumstances as well as direct evidence provided by a defendant in a given case. Id.

With the above in mind, we note that in this case the evidence, both direct and circumstantial, when construed in plaintiffs' favor, shows that Maddox was a veteran union organizer, having conducted at least 15 prior organization drives for the Teamsters. His goal during the drive at Overnite's Atlanta facilities clearly was to gain an advantage over Overnite and its management, forcing them to negotiate a contract favorable to the defendant organizations and their members. The evidence further shows that prior to his publication of the fliers, unlike most laymen, Maddox was familiar with National Labor Relations Board proceedings of the type that were pending against plaintiffs, and Maddox has admitted that he knew such proceedings were civil in nature. Maddox nevertheless used the terms "indicted" and "indictment" in the fliers even though he knew that they had a criminal meaning, and plaintiffs have presented documentary evidence from which a jury could conclude that most laymen, including Maddox's target audience, would place such a meaning on those terms.

Under such circumstances, we conclude that a jury could determine by clear and convincing evidence that Maddox, and thus the other defendants, had published the fliers either knowing that the information they contained was false or with a reckless disregard for whether the information the fliers contained was true or false, and thus, that defendants had acted with actual malice. See *Linn*, 383 U. S. at 64-65; *Barber*, 194 Ga. App. at 289-291. Accordingly, the trial court erred in granting summary judgment to defendants.

2. We find no merit to defendants' contention that the trial court's ruling should be affirmed because the information contained in the fliers was in fact true. Based on the evidence set forth in Division 1, there clearly is an issue of material fact regarding this matter because the terminology in question, when considered within the context of the fliers, clearly is capable of two interpretations, one asserting criminality and the other not. In such situations, "it is for the jury to say, under all the circumstances surrounding [the] publication, including extraneous facts admissible in evidence, which of

the two meanings would be attributed to it by those to whom [the publication] is addressed or by whom it may be read." (Citation and punctuation omitted.) *Fiske v. Stockton*, 171 Ga. App. 601, 602 (1) (320 SE2d 590) (1984). Moreover, in this case, defendants have previously admitted that the fliers erroneously stated that plaintiffs had been formally indicted.

*Judgment reversed. Beasley and Ruffin, JJ., concur.*

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 31, 1998 —

*Sutherland, Asbill & Brennan, Elizabeth V. Tanis*, for appellants.

*Stanford, Fagan & Giolito, Robert S. Giolito*, for appellees.